## Schaeffer *v.* Herman, Appellant.

*Equity—Real estate—Option to purchase—Specific performance —Tender—Ejectment bills.*

1. On a bill for specific performance of an agreement to sell land it appeared that the plaintiff had entered into an agreement of option under seal with two of the defendants for the sale of the land by which agreement the name of a third party was inserted as one of the optionees to whom conveyance was to be made. Before the option was exercised differences arising between plaintiff

and the other optionee the latter not only declared that he had no further interest in the contract but refused to take or participate in any steps looking to an exercise of the option and in connection with other adverse parties sought and obtained from the owners another option in the same land. The plaintiff, made a tender of the entire purchase price within the period of the option. *Held,* that he was entitled to specific performance of the contract, and that his right was not prejudiced by the fact that the other optionee did not join in the bill to compel such performance.

2. In such a case it is within the power of the court to direct a conveyance directly to the assignees of the plaintiff who as the real owners of the title, have intervened as parties plaintiff.

3. Where a person who has exercised an option to purchase land files a bill in equity for specific performance, other parties to whom he has assigned his rights under the contract may be permitted to intervene in the bill as parties plaintiff; but the bill should not be made to include other parties as defendants who did not claim any right or title under the contract, but asserted rights springing out of a subsequent option relating to the land in dispute, but representing a different transaction. As between such parties and the plaintiffs, the only question involved is title to the land in dispute, and as to this equity has no jurisdiction.

4. An option in the nature of a unilateral nudum pactum, under seal, becomes valid and binding as a contract inter partes upon acceptance, and is necessarily the subject of specific performance.

5. A tender is not invalidated if coupled with a condition upon which the debtor has a right to insist and to which the creditor cannot reasonably object.

Argued April 17, 1912. Appeal, No. 16, Jan. T., 1912, by American Lime and Stone Company, defendant, from decree of C. P. Centre Co., Jan. T., 1906, No. 1, on bill in equity in case of Lewis A. Schaeffer, now for use of Rembrandt Peale and T. A. Shoemaker v. John H. Herman, Alice E. Herman, Samuel Sheffer, Frank Warfield, John P. Harris and American Lime and Stone Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed in part.

Bill in equity for specific performance. Before ORVIS, P. J., and SAVIDGE, P. J., specially presiding.

The opinion of the Supreme Court states the case.

*Errors assigned,* among others, were in overruling de-murrers to the bill and the decree of the court.

*Stevens & Pascoe,* with them *T. C. Hipple,* for appel-lant.—Under numerous decisions of this court the con-tract was a mere option, of which time was the essence, because it had been made so by the parties: Barnes v. Rea, 219 Pa. 279; Barnes v. Rea, 219 Pa. 287; McHenry v. Mitchell, 219 Pa. 297.

To be a binding an enforceable contract such an agreement must be based upon a valid consideration: Barnes v. Rea, 219 Pa. 287.

A conditional tender is not good: Forest Oil Co.'s App., 118 Pa. 138; Trodgon v. Williams, 10 L. R. A. (N. S.) 867; Moore v. Norman, 38 Am. State Rep. 528; Hol-ton v. Brown, 46 Am. Dec. 148; Pittsburgh Va. & Charlestown Ry. Co. v. Machine Co., 208 Pa. 73; Wagen-blast v. McKean, 2 Grant (Pa.) 393.

*John Blanchard,* with him *Edmund Blanchard* and *C. LaRue Munson,* for appellees.—An option under seal is binding on the optioner from its inception and if exer-cised in accordance with its terms, becomes a binding contract on both parties and may be specifically en-forced: Barnes v. Rea, 219 Pa. 287; Barnes v. Rea, 219 Pa. 279; Verstine v. Yeaney, 210 Pa. 109; Yerkes v. Richards, 153 Pa. 646; Carson v. Mulvaney, 49 Pa. 88; Fessler's App., 75 Pa. 483.

Schaeffer succeeded to all of Sheffer's rights: Deitz-ler v. Mishler, 37 Pa. 82.

The tender was valid: Dawson v. Ewing, 16 S. & R. 371.

OPINION BY MR. JUSTICE ELKIN, July 2, 1912:

The consideration of this case has been approached from so many angles, that it is difficult to blaze a cor-rect line through the underbrush of legal technicalities to the material points necessary to a proper solution

of the questions here involved. It will be impossible, within anything like the proper limits of an opinion, to discuss consecutively and separately each of the thirty-four assignments of error, and it is not necessary to do so in order to determine the rights of the parties. The original bill was filed by Schaeffer, plaintiff, against John H. Herman, Alice E. Herman and Samuel Sheffer, defendants. The primary purpose of the bill was to compel specific performance of an agreement in writing for the sale of land. The Hermans, and Sheffer, each filed a demurrer to the bill, which was overruled. After the filing of the original bill, Peale and Shoemaker presented a petition asking leave to intervene as parties plaintiff and were permitted to do so. Subsequently the bill was further amended by including Warfield, Harris and the American Lime and Stone Company as parties defendant, and as against the defendants thus included, certain additional relief was prayed for. Warfield, Harris and the American Lime and Stone Company filed a separate demurrer which was also overruled. The case then went to a hearing with all of the parties included either as plaintiffs or defendants. At the outset it is necessary to determine whether the learned court below committed error in overruling the demurrers, or any of them. Without going into an elaborate discussion, we think the demurrers filed by Herman and his wife, and by Sheffer, were properly overruled. They were all parties to the original optional agreement which it was sought to have specifically enforced. They were all interested in, or at least had a connection with, the same transaction. The matters complained of in the bill related to the optional agreement with which all of these parties were either directly or incidentally connected. If the plaintiff was entitled to relief at all, and this depended upon the facts, he certainly had the right to proceed against all of the defendants named in the original bill. If the facts warranted the relief sought, Schaeffer clearly was

within his legal rights in asking the relief prayed for. It is equally clear that Peale and Shoemaker were entitled to intervene as parties plaintiff. They were the assignees of whatever rights Schaeffer had under the agreement. If Schaeffer's title was good, so was theirs, and their intervention in no way affected the rights of the defendants, who could as well defend against all of the plaintiffs thus joined as against the original complainant. Under the facts their rights were no greater and no less than those of Schaeffer. As assignees they were interested in the transaction growing out of the original agreement, and as such had a right with the permission of the court to be heard. There was therefore no error in permitting them to intervene. As to Warfield, Harris and the American Lime and Stone Company, a very different question arises. These parties did not claim any rights under the original agreement and were not asserting any title depending upon that agreement. Whatever claim of title they had, or thought they had, grew out of a different transaction and a subsequent option. If for any reason the original optional agreement should be declared invalid, their option no doubt would have been good, but this all depended upon a transaction with which they had no connection. The rights of the parties under the original agreement, on the other hand, did not depend in the remotest degree upon what was done by these parties in securing rights under a subsequent option. Each agreement represented a separate transaction, and while title to the same land was involved, the rights of the parties grew out of independent contracts. As between these parties the only question involved was title to the land in dispute, and equity does not have jurisdiction to determine questions of disputed title. This has been decided over and over again in Pennsylvania. As between the plaintiffs, and Warfield, Harris and the American Lime and Stone Company, we cannot regard this as anything but an ejectment bill, involving the

question of disputed title, which must be tried, if at all, on the law side of the court: Chambersburg Boro. School District v. School District, 228 Pa. 119. Of course, if it now be determined in this proceeding, that the original optional agreement was properly exercised within the time specified, a good title passed to the optionee, who could assign it to others, and it would necessarily follow that no title passed under the subsequent option, but his question cannot be raised by a bill in equity to specifically enforce the original contract. The bill should have been dismissed as to Warfield, Harris and the American Lime and Stone Company, and we think the learned court below erred in overruling their demurrer. This does not affect the proceeding as to the other parties because the dismissal of the bill as to these defendants, leaves a distinct cause of action, growing out of a single transaction, to be determined between the parties to that transaction, or those having the right to legally represent them, and over the subject matter of this controversy equity has jurisdiction to give relief.

The important question of fact in the case is whether the original option was properly exercised within the time specified in the agreement for the sale of the land in dispute. The agreement, dated December 30, 1904, was in writing and under seal. It was signed by Herman and his wife, who agreed to convey, and by Schaeffer, who had the option to purchase. The conveyance, in the event of the option being exercised, was to be made to Schaeffer and Sheffer, their heirs and assigns. The purchase price was to be paid on or before January 1, 1908, and the agreement was to be deemed null and void if the consideration was not paid within the time specified. Time was of the essence of the contract, it being necessary in order to exercise the option to make, or tender, payment in accordance with the terms of the agreement. This means that the optionees had until the first day of January, 1908, to make or tender pay-

ment. The contract was binding upon the Hermans from the date of its execution, and became a contract inter partes, binding on all concerned, if properly exercised, on or before January 1, 1908: Barnes v. Rea, 219 Pa. 279; Barnes v. Rea, 219 Pa. 287. On this branch of the case the only question that can arise is whether the option was properly exercised. The facts have all been found in favor of Schaeffer, and the evidence fully warrants the findings, but with the facts so found, there still remains a mixed question of law and fact to be determined. The name of Sheffer by direction of Schaeffer was inserted as an optionee in the agreement, and in that sense he became a party to the contract, although he did not sign it. Differences arose between Schaeffer and Sheffer respecting the option and their rights under it, and these differences remaining unadjusted, Sheffer on August 17, 1905, declared that he had no further interest in the option and refused to take any steps looking to an exercise of it, or to assist Schaeffer in so doing. After his disagreement with Schaeffer, Sheffer in connection with other adverse parties, began negotiations with the Hermans for a new option on the same land, and finally succeeded in obtaining it. He had full knowledge of the former option, and knew that Schaeffer insisted upon his right to exercise it, but notwithstanding, he and those associated with him persisted in their efforts to secure another option. In so doing they took their chances and cannot plead want of knowledge in extenuation of their conduct. The learned court below found as a fact that Sheffer in taking the new option and Herman in giving it, acted in bad faith and in wilful disregard of the rights of Schaeffer under the original agreement. Under this state of facts, it is perfectly clear, that the rights of Schaeffer under the original agreement should be protected, provided he was in position to assert them without the co-operation of Sheffer. It is contended for appellants that when a contract for the purchase of

real estate recites that the conveyance shall be made to two persons, a bill cannot be maintained by one to compel the vendor to convey the entire title to that one. This would certainly be true if both vendees were asserting rights under the contract, and if neither vendee was in position to demand the conveyance of the entire title to him. On the other hand, it would be most unconscionable to permit a vendor for purposes of his own to enter into an arrangement with one of two vendees by which the right to a conveyance was not to be demanded, and thus defeat the right of the other vendee to have his contract enforced. In cases of this kind much depends upon the facts. Acts of one in relation to the common estate, so far as beneficial thereto, will be presumed to inure to the benefit of all who may be interested therein: 17 Am. & Eng. Ency. of Law (2nd Ed.) 668. In our own State, it has been held, that where a joint purchaser's share of the purchase money under a contract for the sale of land is paid by his associates, and he fails to pay his share of the purchase money, the other joint purchasers acquire an equitable title, and neither he nor those claiming under him can recover in ejectment against the joint purchasers who do pay, without paying, or tendering, before suit brought, his share of the purchase money: Deitzler v. Mishler, 37 Pa. 82. Even if Schaeffer be considered nothing more than a joint purchaser with Sheffer, he had the right to pay, or tender payment of, the entire purchase price, and when he did so, the most Sheffer could insist upon was that as to his share, Schaeffer held an equitable title, which could not be asserted without Sheffer either paid, or tendered, his share of the purchase money, and this he failed to do. There is a fiduciary relation existing between joint tenants, joint vendees and joint optionees, which gives to one the right to perform acts beneficial to the common estate. Surely Schaeffer, one of the optionees, had the right to pay, or tender payment of, the entire purchase price, and when he did so,

as the court below found he did, the optionors were not
in position to say we will not comply with our covenant
to convey because both of the optionees did not join in
making the tender.   Either one of the optionees could
tender the entire purchase price and thus exercise the
option.   The only question that could then arise is as
to whom the conveyance should be made, but when
either one of the optionees tendered the purchase price
within the time specified in the agreement, there was an
election to purchase, and the contract became binding
inter partes.   We agree that if Sheffer had any rights
under the original agreement, or if he had done nothing
to forfeit his rights thereunder, or if he had not joined
with Herman in executing a new option for the pur-
pose of avoiding a conveyance under the original option,
he might be in position to ask equitable relief or per-
haps to demand that his rights be recognized in the con-
veyance.   But the court below has found that Sheffer
and Herman ignored the original agreement, and that
Sheffer not only declared that he did not claim any
rights under it, but by his acts forfeited whatever rights
he might otherwise have asserted.   Certainly, Sheffer
and Herman by thus acting could not defeat the right
of Schaeffer to insist upon a performance of the con-
tract when he had complied with its terms.   We there-
fore conclude, under the facts as found, that Schaeffer
was in position to compel specific performance of the
contract.

It is also urged that the original agreement was a
unilateral nudum pactum, without any consideration to
support it, and therefore not specifically enforceable.
We cannot accept this position as sound.   We agree
that there is a sharp conflict of authority as to the
effect to be given an option under seal when the courts
are asked to decree specific performance of such a
contract.   On one side, it is held, that the seal renders
the option irrevocable, and on the other, that the courts,
looking to the substance and not the form, should dis-

regard the seal, and treat the option as revocable until accepted. But even in this conflict of authority, both sides agree, that when the option is accepted, that is, when it is exercised according to its terms, it becomes a valid binding contract, and necessarily the subject of specific performance. The conflict of authority as to the effect of the seal is limited to the rights of the parties during the option period, and before there has been an acceptance. After acceptance, the contract then being inter partes is to be treated like any other contract made between contracting parties, and subject to the same rules of law. In the case at bar the court has found as a fact that there was an acceptance, and therefore what was in the first instance a unilateral agreement became an absolute contract binding upon both parties according to its terms.

Nor can we agree with the contention of appellants that the tender made by Schaeffer to Herman was accompanied with such conditions as to make it invalid. The general rule no doubt is that a tender must be absolute and without condition, but in this broad sense the rule must necessarily be subject to some qualifications as applied to the facts of a particular case. It is more accurate to say that a tender, to be good, must not be accompanied by any condition to which the creditor has a right to object, and is not invalidated if coupled with a condition upon which the debtor has a right to insist, and to which the creditor cannot reasonably object: 28 Am. and Eng. Ency. of Law (2nd Ed.) pages 31 and 32, and notes. It is proper to accompany the tender with an explanation of the transaction. In the present case Herman had the right to insist upon the payment of the purchase price and it was necessary for the optionees, or one of them, to tender the entire amount, and this was done. It is true that the tender was accompanied by an explanation that Sheffer had forfeited his rights under the contract, and that it was being exercised by Schaeffer alone. If this explanation

were true in point of fact, and Herman knew that Sheffer had relinquished his rights under the original agreement, he would not be warranted in refusing to convey to Schaeffer, if the latter was in position to in-. sist on performance. This is especially true in view of the findings of the court, that Herman and Sheffer had joined hands in an attempt to render the first agreement null and void in order to secure a better price under the new option. The learned court below found all the facts relating to the validity of the tender in favor of Schaeffer, and upon the facts as found, we conclude there was a sufficient tender to meet the requirements of the contract and to preserve the rights of the parties under it.

Again, it is urged with much force, that even if the tender be held good, the contract can only be specifically enforced in favor of both optionees, and that the court erred in decreeing a conveyance to Peale and Shoemaker, their heirs and assigns. This objection is more apparent than real. The original agreement required a conveyance to the optionees, their heirs and assigns. No one will doubt that if both optionees had assigned their interest in the contract to other parties, those parties by complying with the terms of the agreement, could demand performance; or if one of the optionees had formally relinquished his rights under the agreement in favor of the other, and the remaining optionee had then assigned all rights resulting to him to third parties, they would be in position to insist upon specific performance. This in substance is what the learned court below found the parties did. Sheffer forfeited all his rights under the contract, and this left Schaeffer in position to carry out the contract, to tender the entire purchase price and to demand performance. Schaeffer was therefore in position to assign his interest to Peale and Shoemaker, and they as his assignees, could assert whatever rights he had under the contract. Equity regards that as done which should

have been done.  When all·the parties were before the court, and their rights determined under the ·facts, it was within the power of the court to decree a conveyance direct to Peale and Shoemaker, the real owners of· the title, without resorting to the circumlocution of directing a conveyance to the different parties representing the various steps in the transaction.  This is what the court did, and, under the facts, we see no error in the course taken.

Many other questions have been raised and discussed, but we do not consider them vital in the consideration of the case.  The facts fully warranted the findings and the conclusion reached respecting the original parties to the transaction was equitable and just.

We sustain those assignments which relate to the order of the court below refusing to sustain the demurrer filed by Warfield, Harris and the American Lime and Stone Company.  As to these defendants the bill is dismissed with costs.  The plaintiffs having improperly included these defendants in the bill, should pay these costs.

Decree modified so as to exclude clauses 3, 4 and 5 from its requirements, and as modified, it is affirmed. The costs of Warfield, Harris and the American Lime and Stone Company to be paid by appellees, and all other costs by appellants.