[Civ. No. 3708. Third Appellate District.—April 12, 1929.]

C. B. BOGUE, Respondent, v. GEORGE ROETH et al., Appellants; L. E. WALKER, Intervener and Respondent.

George R. Freeman for Appellants.

W. T. Belieu for Intervener and Respondent.

THOMPSON (R. L.), J.—This is an appeal from separate verdicts and a judgment for damages in favor of the plaintiff and also in favor of the intervener in an action to replevin 1150 head of cattle which were held by the defendants upon a claim of lien to secure the payment of an account for pasturage.

The defendants held a lease on 7,500 acres of pasture land in Glenn County. The plaintiff was the owner of more than 1100 Hereford cattle, for the grazing of which he con-

tracted to pay the defendants not to exceed $8,250 computed at the rate of $2.50 apiece per month for 1,000 cows for a period of three months, and $2 apiece per month during the same period for all stock in excess of that number, esti-mated at about 125 additional cows. Pursuant to this agree-ment plaintiff's cattle were delivered to the defendants for pasturage in December, 1924, and a large proportion of them were retained until the latter part of May, 1925. Three hundred and ninety-five cows were redelivered May 10, 1925. The remaining stock was held by the defendants under a claim of lien to secure the unpaid charge for pas-turage. April 5, 1925, the plaintiff contracted to sell to the intervener L. E. Walker 1050 head of cattle at a specified price, agreeing to deliver the stock prior to May 10, 1925. Upon this last-mentioned date the plaintiff tendered defend-ants the sum of $8,250 in full payment of what was claimed to be the agreed maximum cost of pasturage, and thereupon demanded delivery of his cattle, which was refused by the defendants upon the ground that they were entitled to approximately $15,000 for accrued cost of pasturage. There-upon this suit was instituted. On June 16, 1925, by agree-ment, $16,000 was deposited in escrow with a Willows bank to secure the payment of the pasturage account, and the cattle were then released. In the meantime the market value of beef cattle declined materially and both the plain-tiff and the intervener thereby sustained a substantial loss.

Upon the trial three separate verdicts were rendered, one in favor of the plaintiff for damages in the sum of $1134; one in favor of the defendants for pasturage in the sum of $8,250, and the third in favor of the intervener for dam-ages in the sum of $3,454.89. A judgment in accordance with these verdicts was then entered, from which this appeal was perfected.

The record discloses the fact that on April 5, 1925, the intervener Walker contracted to purchase 1050 head of these cattle from the plaintiff to be delivered by May 20th; that 674 head of cattle were not so delivered for the reason that defendants held them upon a claim of lien for pastur-age; that "the plaintiff C. B. Bogue and the intervener L. E. Walker in turn demanded of the defendant Roeth, King & Roeth the delivery of said cattle consisting of 674 head on May 10, 1925, and (then) offered to pay defendants

the pasturage on said cattle up to that time amounting to $8,250,'' which tender by both the plaintiff and the intervener was refused on the sole ground that defendants claimed they were entitled to a greater sum of money for pasturage; that the cattle were then fat beef cows fit for market, and that the price of beef cattle for the season was then at its peak, but that the value and condition of the cattle rapidly depreciated thereafter, so that when they were actually delivered to the plaintiff between June 13 and 18, 1925, they had become what was termed "feeder cattle" only; that upon resale of the stock a substantial loss was sustained by both the plaintiff and the intervener. The amount of damages thus suffered by the plaintiff was fixed by the jury at $1134, which loss is supported by the record, together with damages which were awarded to the intervener in the additional sum of $3,454.89.

The proceedings of this trial are presented by means of a bill of exceptions. The appellants contend that the record discloses no interest of the intervener in the litigation authorizing an intervention pursuant to section 387 of the Code of Civil Procedure; that the evidence fails to show a tender of the money found to be due for pasturage, sufficient upon which to warrant a judgment for damages; that the trial court erred in refusing to permit an examination of witnesses on the subject of a tender, and in refusing to permit an amendment of their answer during the trial to specifically deny the alleged tender; and that the court erred in giving to the jury and refusing certain instructions.

While the cattle remained in the lawful possession of the defendants, they were entitled to a lien upon the stock to secure the payment of the amount for pasturage which was actually due under the terms of their contract. (Sec. 3051, Civ. Code; Stats. 1869–1870, p. 723, 1 Deering's Gen. Laws 1923, p. 1626, Act 4344.) A valid tender of the full amount due to the defendants had the effect of discharging the lien and entitling the plaintiff to prompt delivery of the stock. (26 R. C. L. 654, sec. 39.) A failure to comply with this demand for delivery under such circumstances created a liability against the defendants for all damages which accrued therefrom. (*Loughborough* v. *McNevin*, 74 Cal. 250, 257 [5 Am. St. Rep. 435, 14 Pac. 369, 15 Pac. 773].)

■ The complaint admitted that $8,250 was due to the defendants and alleged a tender of that amount. The answer failed to deny the alleged tender. It specifically disclaimed that "only the sum of $8,250 was due for pasturage," and upon the contrary asserted that $14,833.85 was due the defendants. The mere denial of plaintiff's alleged right to the possession of his cattle did not amount to a sufficient denial of the tender of money which was specifically alleged. The defendants' only claim of right to retain the custody of the stock was to secure their lien for pasturage. In the absence of a special demurrer the tender was adequately pleaded. ■ The sufficiency of a plea of tender must be raised by either a demurrer or an answer. ■ A plea of tender must be expressly denied or it will be deemed to have been admitted. (38 Cyc. 170; 24 Standard Ency. of Proc. 771.) ■ The affirmative allegation contained in the answer that a sum was due the defendants which was greatly in excess of the amount tendered and found by the jury to have been due, together with the fact that the case was tried on the part of the defendants upon the theory that they were entitled to this larger sum of money, furnishes sufficient basis upon which to assume that plaintiff's tender of $8,250 was futile, and it was therefore unnecessary for him to pay that amount into court to keep the tender good. ■ Ordinarily a tender need not be kept good when it appears that it will not be accepted. (26 R. C. L. 624, sec. 3, p. 643, sec. 24.) ■ Moreover, a mere objection to the amount of a claim tendered will be deemed to be a waiver of all other alleged defects of the tender, such as inability to pay or the character of money offered or the invalidity of a check. (26 R. C. L. 628, sec. 7.)

■ Aside from the question of damages resulting from defendants' refusal to deliver the stock to plaintiff, the sole issue upon which the pleadings were drawn and upon which the case was tried was the amount due to the defendants for grazing the cattle. Having tacitly admitted the tender by their failure to deny it, the defendants were precluded from questioning for the first time during the progress of the trial the plaintiff's ability to pay the money offered, or his failure to keep the tender good. The court, therefore, correctly sustained objections on the part of the plaintiff to defendants' cross-examination of witnesses upon this subject.

■ Nor was there an abuse of discretion on the part of the court in refusing to permit defendants to amend their answer so as to deny the alleged tender, which motion to amend was first made during the progress of the trial.

■ There is no merit in the defendants' contention that L. E. Walker, who held a valid contract for the purchase of 1,050 head of cattle sought to be replevined in this suit, possessed no such interest in the subject of this litigation as would entitle him to intervene under section 387 of the Code of Civil Procedure, which provides in part: "At any time before trial any person who has an interest in the matter of litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." One who holds a valid contract to purchase personal property which is involved in a suit of replevin has an interest in the matter in litigation entitling him to intervene as a party to the action. (*Loughborough* v. *McNevin, supra; Gaines* v. *Clark*, 275 Fed. 1017, 1019 [51 App. D. C. 71]; 20 Cal. Jur. 520, sec. 25.) "The code does not attempt to specify what or how great the interest shall be, in order to give a right to intervene. Any interest is sufficient. The fact that the intervener may or may not protect his interest in some other way is not material." (*Coffey* v. *Greenfield*, 55 Cal. 382; *Dennis* v. *Kolm*, 131 Cal. 91 [63 Pac. 141].) ■ In the present case the matter in litigation consisted primarily of the right to the possession of the cattle, incident to which there was also involved the question of damages for unlawfully detaining them from the owner. Certainly the purchaser of the cattle was interested in the delivery and possession of the stock so that he might market them at a profit. This interest entitled him to intervene even though he might have maintained a separate action for damages against the vendor of the cattle for failure to deliver them pursuant to contract. ■ The interest in the outcome of the replevin action authorizing the intervention of the respondent under section 387 of the Code of Civil Procedure, was not altered or terminated by the delivery of the cattle to the plaintiff pursuant to the deposit of cash accompanied by the conditional contract which was equivalent to a surety bond. The conditional trust deposit and agreement specifically reserved the appellants' lien.

In lieu of a surety bond, $16,000 in cash was deposited in trust with the Glenn County Bank at Willows accompanied with a written agreement, by the terms of which the appellants' lien on the cattle for pasturage was specifically reserved. It authorized delivery of the stock pending the litigation "without waiving any of the aforesaid liens." This escrow agreement and cash deposit constituted a mere undertaking to obtain possession of the cattle without releasing the lien. The determination of the priority of liens was an important issue preserved by the terms of the escrow transaction. The delivery of the cattle was therefore conditional, and did not affect the merits of the cause. The damages sought to be recovered by the intervener accrued prior to the release of the cattle. In 5 Cal. Jur. 178, sec. 15, it is said: "The effect of delivery upon undertaking is simply to give the party the possession of the property pending the litigation, and not to divest either the title or the lien of the other party. . . . The title does not vest . . . until the judgment. . . . Accordingly, he cannot sell it so as to convey good title even to an innocent purchaser. . . . The property remains in the custody of the law and all parties must take notice." (*Hunt* v. *Robinson*, 11 Cal. 262; *Bailey* v. *Security Trust Co.*, 34 Cal. App. 348 [167 Pac. 409]; *Riverside Portland Cement Co.* v. *Taft*, 192 Cal. 643 [221 Pac. 357].) The separate verdict in favor of the intervener is, therefore, supported by both the law and the record in this case.

We find no prejudicial error in the instructions given or refused. On this appeal the appellants are precluded from questioning the form of any instructions except those which were offered by the defendants and refused as appears in paragraph twelve of the bill of exceptions, for the reason that no other instructions are specified therein as error. (Sec. 648, Code Civ. Proc.) These challenged instructions, as well as the specifications of error, are confined entirely to the defendants' theory of the insufficiency of the alleged tender; the failure of plaintiff to have paid the money into court or to perform acts to keep the tender good; the legal right of the respondent, Walker, to intervene and his right to the possession of the cattle.

It is true that plaintiff's instructions "A" and "B" conflict as to the actual date of the tender of the

amount for pasturage which was found to be due. The complaint alleged that the tender was made on May 9th. Plaintiff's instruction "A" declares that: " . . . if you find . . . that the plaintiff had contracted . . . to sell his cattle . . . and that said cattle shrunk in weight between May 10th and June 13th, 1925, and you . . . also find that the plaintiff is entitled to the possession of said cattle . . . on May 10, 1925, following the tender of the plaintiff to the defendants of the sum of $8,250 which tender is admitted by the defendants . . . ," under such circumstances plaintiff would be entitled to damages against the defendants for such sum as would compensate him for the loss in the weight of the cattle. Plaintiff's instruction "B" directly instructed the jury that it was an admitted fact that the tender occurred on May 25th. The record shows that both the plaintiff and the intervener demanded the delivery of the cattle, "on May 10, 1925, and (then) offered to pay defendants the pasturage on said cattle up to that time amounting to $8,250.00." Both the pleadings and the evidence support the conclusion that the tender actually occurred "about May 9th," or specifically on May 10th. This last-mentioned date is, therefore, the time upon which the plaintiff was entitled to possession of the cattle, and from which time damages for loss of the weight of the cattle should be computed. If the jury estimated such damages from the later date of May 25th the defendants profited thereby, and may, therefore, not complain. Plaintiff's instruction "B" is not prejudicial and hence should be disregarded.

 It is contended that the intervener's instruction "H" was a positive charge that he had an absolute right to the possession of the cattle. We are of the opinion this instruction may reasonably be construed otherwise. It read: "If you should find from the evidence in this case that both plaintiff and defendants wrongfully failed to deliver said cattle to Intervener *when* he had a right to their possession then your verdict should be in favor of Intervener and against both plaintiff and defendants." It seems apparent that the meaning which was intended to be conveyed by this instruction is that the italicized word "when" should be construed to mean "if" or "in the event." At least it is reasonable to conclude the court, by means of this instruction, directed the jury that if they should find that both

plaintiff and defendants failed to deliver the cattle to the intervener *in the event* "he had a right to their possession then your verdict should be in favor of Intervener. . . . "

Instructions should receive such reasonable construction as will uphold, rather than defeat, a judgment. After examining all of the challenged instructions we are of the opinion that the jury was not misled thereby. While several of them are open to the construction placed upon them by the appellants, there appears to be no prejudicial error. With respect to the period of time during which the jury were permitted to compute damages, it was plainly informed in intervener's instruction "K" that: "You are only to consider the condition of the market price of cattle between May 10, 1925, when intervener claims he demanded the same, and the date he received them." Neither the amount of damages which was awarded to the plaintiff, nor the amount which was assessed in favor of the intervener, is questioned. It is not claimed that the amount of either of these verdicts is excessive. This question may not be raised on this appeal for the reason that the specifications of error fail to designate the insufficiency of evidence to support the amount of damages found to have accrued.

Section 648 of the Code of Civil Procedure provides that a bill of exceptions "must specify the particulars in which such evidence is alleged to be insufficient." (*Mills* v. *Brady*, 185 Cal. 317 [196 Pac. 776]; *Clarkson* v. *Moir*, 53 Cal. App. 775 [201 Pac. 474].) It is, therefore, immaterial that intervener's instruction "M" omitted to state in the language of section 3353 of the Civil Code that the term "market value" meant "the value of property to a seller thereof . . . which he could have obtained therefor *in the market nearest to the place* at which it should have been accepted by the buyer. . . . "

Upon the principles of law heretofore announced with respect to a tender of money acknowledged to be due, the adequate pleading thereof, the failure of the defendants to specifically deny the alleged tender and the right of the owner to the possession of the stock, together with defendants' liability for damages for detaining the cattle, the court properly refused to give to the jury defendants' instructions which are contained in paragraph twelve of the bill of ex-

ceptions. These are the only instructions adequately challenged by the record.

The judgment is, therefore, affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 11, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1929.

All the Justices present concurred.